# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. GEORGE BELLEVUE; STATE OF ILLINOIS ex rel. GEORGE BELLEVUE; and GEORGE BELLEVUE, individually, <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSAL HEALTH SERVICES OF HARTGROVE INC., d/b/a HARTGROVE HOSPITAL, <br><br> Defendant. | No. 11 C 5314 <br><br> Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

George Bellevue brings this action on behalf of the United States of America and the State of Illinois alleging that Universal Health Services of Hartgrove Inc. ("Hartgrove") violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729(a)(1)(A), (B), and the Illinois False Claims Act ("IFCA"), 740 ILCS 175/3(a)(1)(A), (B), when it submitted certain Medicaid reimbursement claims. *See* R. 1. The Court dismissed Bellevue's initial complaint without prejudice, *see* R. 44, and he has now filed an amended complaint. R. 48. Hartgrove has moved to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for failure to state a claim. R. 50. For the following reasons, Hartgrove's motion is granted, and Bellevue's amended complaint is dismissed with prejudice.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

Additionally, it is well-established that the FCA "is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b)." *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 998 (7th Cir. 2014). Rule 9(b) requires a "plaintiff to do more than the usual investigation before filing [a]

complaint. Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (citations omitted). A complaint generally "must provide the who, what, when, where and how" of the alleged fraud. *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007).

## Analysis

The Court assumes familiarity with the facts and analysis in its opinion and order of April 24, 2015 (the Court's "prior order"). *See* R. 44 (*United States ex rel. Bellevue v. Universal Health Servs. of Hartgrove*, 2015 WL 1915493 (N.D. Ill. Apr. 24, 2015)). To the extent that Bellevue has made new allegations in his amended complaint, the Court will describe and address them in the course of the following analysis.

## I. Public Disclosure Bar – Original Source

Congress amended the FCA in 2010. In its prior order, the Court applied the pre-2010 statute to hold that Bellevue is an "original source" of the allegations in his complaint regarding Hartgrove's conduct before the 2010 amendments took effect, such that those allegations are not barred by the public disclosure doctrine. *See* R. 44 at 17-23 (*Bellevue*, 2015 WL 1915493, at *7-10). Hargrove now argues that "[s]ubsequent to the Court's [prior order] . . . the Seventh Circuit . . . clarified that the amended version of the public disclosure bar 'controls' the entirety of a case (like this one) filed after 2010, even where the plaintiff alleges conduct both before and

after 2010." R. 50 at 14 (quoting *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 703 (7th Cir. 2015)).

The Court disagrees that the Seventh Circuit's decision in the *Sanford-Brown* case (and in *United States ex rel. Heath v. Wisc. Bell, Inc.*, 760 F.3d 688, 690 n.1 (7th Cir. 2014), on which *Sanford-Brown* relied) changed the standard such that the post-amendment statute is applicable to pre-amendment conduct. The Supreme Court has held that the 2010 amendments are not retroactive. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010). And the Seventh Circuit twice relied on the Supreme Court's holding in *Wilson* to hold that the "version of [the FCA] applicable to [a plaintiff's] lawsuit is the version that was 'in force when the events underlying [the] suit took place.'" *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 828 (7th Cir. 2013) (quoting *United States ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 934 (7th Cir. 2012) (citing *Wilson*, 559 U.S. at 283 n.1)); *see also United States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 706 (7th Cir. 2014) ("[B]ecause the conduct underlying this action and the filing of the action itself all occurred well before the 2010 amendments to [the FCA], we apply that section as it existed before 2010."). Moreover, the standard expressed in *Leveski*, *Goldberg*, and *Absher*—that it "is the version [of the statute] that was in force when the events underlying [the] suit took place [that controls]"—comports with the Supreme Court's general principle regarding the retroactive applicability of statutory amendments: "the legal effect of conduct should ordinarily be assessed under the law that existed when the

4

conduct took place." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *see also Jeudy v. Holder*, 768 F.3d 595, 599 (7th Cir. 2014) (applying *Landgraf*). Furthermore, on the basis of this principle, the Sixth and Fourth Circuits, and courts in this District, have applied the pre-amendment FCA statutory language to pre-amendment conduct in cases filed after the amendments' effective date. *See United States ex rel. Antoon v. Cleveland Clinic Found.*, 788 F.3d 605, 615 (6th Cir. 2015) ("'the 2010 version of the public-disclosure bar cannot be applied . . . notwithstanding the fact that the complaint was filed after the effective date of the amendments'" (quoting *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 918 (4th Cir. 2013))); *United States v. Bd. of Educ. of City of Chi.*, 2015 WL 1911102, at *7 (N.D. Ill. Apr. 27, 2015) (applying the *Leveski* standard); *United States ex rel. Bogina v. Medline Indust., Inc.*, 2015 WL 1396190, at *2 n.3 (N.D. Ill. Mar. 24, 2015) (same); *United States ex rel. Cause of Action v. Chi. Trans. Auth.*, 71 F. Supp. 3d 776, 779 n.2 (N.D. Ill. 2014) (same).

*Leveski*, *Goldberg*, and *Absher*, however, all concerned conduct that occurred, and complaints that were filed, before the 2010 amendments to the FCA. By contrast, Hartgrove argues that complaints filed after the 2010 amendments are governed by the post-amendment statutory language, even if the complaint makes allegations about conduct that occurred before the amendments. In support of this argument, Hartgrove cites the following passage from the Seventh Circuit's decision in *Sanford-Brown*:

> [The plaintiff] filed this action in 2012, but it potentially covers claims that have accrued since 2006—and two

5

> different versions of the § 3730(e)(4) have operated as law throughout the time period covered by [the plaintiff's] suit. No matter. The 2010 version of § 3730(e)(4) is not retroactive and it controls here.

788 F.3d at 703 (citing *Heath*, 764 F.3d at 690 n.1). And in *Heath*, the court stated that "the version of the statute in place at the time [the plaintiff] filed this suit applies." 760 F.3d at 690 n.1. In *Heath*, however, both the conduct at issue occurred, and the complaint was filed, *before* the amendments took effect. Thus, *Heath's* application of the version of the statute in place at the time the suit was filed does not conflict with *Leveski's* rule that the version of the statute in force when the events underlying the suit took place controls.

Unlike *Heath*, *Sanford-Brown* concerned a complaint filed after the FCA amendments, and conduct that occurred both before and after the amendments. Nevertheless, in that case the court found that the plaintiff conceded that his allegations were "publicly disclosed," and that he lacked "independent knowledge" of fraudulent conduct. *See Sanford-Brown*, 788 F.3d at 703-04. Although the court noted that the 2010 version of the statute "controls here," that statement was inconsequential to the court's analysis because the FCA both pre- and post-amendment prohibits claims based on publicly disclosed information and requires plaintiffs to have independent knowledge of the fraud. *Id.* Since the plaintiff in *Sanford-Brown* conceded both these points, the court did not need to determine whether the amendments applied to pre-amendment conduct.

The Seventh Circuit's holdings in *Sanford-Brown* and *Heath* that the version of the statute in place at the time the plaintiff filed the suit controls must be read in

6

the context of those two cases. And as discussed, when read in context, the holdings do not contradict the standard as expressed in *Leveski*. Furthermore, *Leveski's* standard comports with general principles of statutory retroactivity, and a number of courts have applied the FCA amendments in accordance with *Leveski's* standard. For these reasons, the Court does not agree with Hartgrove's argument that *Sanford-Brown* constitutes a change in the law. Accordingly, the Court will not revisit the rulings it made in its prior order and will not dismiss any of Bellevue's claims based on the public disclosure bar, including whether Bellevue was an original source.

## II. Failure to State a Claim

### A. Failure to Provide Inpatient Psychiatric Services Claim

Bellevue's amended complaint includes allegations supporting a theory of liability that he did not include in his initial complaint. Bellevue alleges that Hartgrove is an "inpatient psychiatric hospital" for purposes of Medicaid claims, *see* R. 48 ¶ 38, and that Hartgrove's failure to provide rooms to certain patients means that its claims for reimbursement for "impatient psychiatric services" are fraudulent. *Id.* ¶ 43. Bellevue supports this argument with reference to the Code of Federal Regulations governing Medicaid payments and unrelated provisions of the Illinois Administrative Code. Bellevue cites the definition of "inpatient" in the Illinois Hospital Report Card Code to allege that "inpatient" means "a person admitted for at least one overnight stay to health facilities, usually hospitals, that provide board and room, for the purpose of observation, care, diagnosis or

7

treatment." *Id.* ¶ 39 (citing 77 ILAC 255.100). Bellevue also cites the Illinois administrative code governing "Construction Requirements for Existing Hospitals" to allege that a "patient room" must have "a toilet, a sink, and closet for storing personal items." R. 48 ¶ 40 (citing 77 ILAC 250.2630(d)(1)). Bellevue then notes that 42 C.F.R. § 441.150 "specifies the requirements of inpatient psychiatric services for individuals under age 21," and alleges that "[p]atients not provided a room do not meet the definition of 'inpatient.'" R. 48 ¶ 42. "Therefore," Bellevue claims, "inpatient claims . . . submitted by [Hartgrove] for patients not assigned a patient room are false claims submitted in violation of the [FCA]." *Id.* ¶ 43.

This theory of liability borders on frivolous. Bellevue claims that 42 C.F.R. § 441.150 provides that "patients not provided a room do not meet the definition of 'inpatient,'" but there is no such provision in that section of the regulations. Bellevue argues that the definitions of "impatient" and "patient room" in the Illinois administrative code should be imported into the federal regulations, but he offers no authority for this theory. The definitions come from sections in the Illinois Administrative Code governing hospital construction and procedures for reporting data to the state. They are entirely unrelated to Medicaid payment conditions. Thus, Bellevue cannot succeed on this theory of liability.

B.  **Worthless Services Claim**

As in his initial complaint, Bellevue again claims that Hartgrove's "submission of claims for patients assigned to dayrooms and not a patient room is a false claim." R. 48 at 12 (¶¶ 44-45). The Court dismissed this theory of liability in its

8

prior order, explaining that it was a form of the "diminished value of services theory" that the Seventh Circuit has rejected. *See* R. 44 at 25 (*Bellevue*, 2015 WL 1915493, at *10-11 (citing *Absher*, 764 F.3d at 710)). The Court rejected this theory of liability here because "Bellevue's only argument in support of this theory . . . [was] that an individual room is 'essential' to the treatment Hartgrove provides to its patients. . . . Yet Bellevue only makes this argument in summary fashion . . . . and does not explain . . . why a room is so essential to treatment." R. 44 at 25 (*Bellevue*, 2015 WL 1915493, at *11). In his amended complaint, Bellevue again summarily alleges the "essential" nature of an individual room, alleging that a "patient room, as opposed to a rollaway bed in a dayroom, is an essential requirement for inpatients being treated for acute mental illness." R. 48 ¶ 44. Despite the Court's analysis in its prior order that specifically noted this deficiency, Bellevue has again failed to explain or describe how a patient's treatment is adversely affected by temporarily sleeping in a dayroom, let alone how such circumstances equate to delivery of "worthless services" by Hartgrove, as the Seventh Circuit requires. For these reasons, the Court again dismisses Bellevue's claims based on this theory of liability.

### C. False Certification Claim

Bellevue realleges his claims based on a theory of false certification. *See* R. 48 ¶¶ 46-55. He, however, fails to add anything to his allegations in this regard. Thus, the Court dismisses Bellevue's claims based on this theory of liability for the same

reasons stated in the Court's prior order. *See* R. 44 at 26-29 (*Bellevue*, 2015 WL 1915493, at \*11).

### D. Fraudulent Inducement Claim

In its prior order, the Court noted that although Hartgrove certified that it would comply with all applicable regulations, including those limiting the number of patients it could service, such "prospective certification can only establish an FCA claim under a theory of fraudulent inducement where the plaintiff alleges that the defendant never intended to comply with the conditions of participation." R. 44 at 28 (*Bellevue*, 2015 WL 1915493, at \*11). Bellevue alleges that Hartgrove "fraudulently induced HFS to permit [Hartgrove] to participate in the Illinois Medical Assistance Program." R. 48 at 14. But this is an unadorned allegation devoid of any factual content that was not already alleged in Bellevue's initial complaint. Thus, Bellevue has failed to state a claim based on a theory of fraudulent inducement.

## Conclusion

For the foregoing reasons, Hartgrove's motion, R. 50, is granted, and Bellevue's complaint is dismissed with prejudice.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: October 5, 2015

10